**\*\*NOT FOR PUBLICATION \*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUANN CLEM, : | Civil Action No. 15-6809 (FLW)(LHG) |
| : | |
| Plaintiff, : | **OPINION** |
| v. : | |
| CASE PORK ROLL COMPANY, : | |
| Defendant. : | |

**WOLFSON, United States District Judge**:

This matter comes before the Court on a motion filed by Defendant Case Pork Roll Company ("Case" or "Defendant"), the former employer of Plaintiff Louann Clem ("Clem" or "Plaintiff'"), seeking dismissal of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Amended Complaint asserts two claims of associational discrimination by way of hostile work environment and constructive discharge pursuant to: (1) the Americans with Disabilities Act of 1990 ("ADA"); and (2) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -42. Plaintiff alleges that Case discriminated against her based on two of its executives making "numerous comments" to her regarding unusual and unpleasant symptoms arising from a gastric bypass surgery performed on her husband, who was also Plaintiff's co-worker. Plaintiff alleges that these comments resulted in the creation of a hostile work environment and her constructive termination. For the following reasons, Defendant's Motion to dismiss is GRANTED in part and DENIED in part.

Specifically, Count I of the Amended Complaint is DISMISSED without prejudice based on Plaintiff's failure to plead facts that would show the alleged conduct resulted in an alteration of

1

the terms and conditions of her employment, as is required to show the existence of a hostile work environment or constructive discharge and, therefore, has failed to allege an adverse employment action by Defendant. In the event that Plaintiff is unable to cure the deficiencies in her pleading within fourteen (14) days of the date of this Opinion, the Court will decline to exercise supplemental jurisdiction over Count II of the Amended Complaint, and that claim will be dismissed without prejudice so that Plaintiff may file that claim in the Superior Court of New Jersey within the 30-day period provided by 28 U.S.C. § 1367(d).

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from the Amended Complaint. Clem was hired by Case in June of 2008 as a part-time Administrative Assistant to the Comptroller, who was also her husband, Richard Clem. Am Compl. ¶¶ 18, 20. Clem alleges that "[a]t all times relevant to the Complaint, Mr. Clem was disabled and/or perceived as disabled under the meaning of the ADA and NJLAD." *Id.* at ¶ 21. Specifically, in 2010, Mr. Clem weighed 420 lbs. and suffered from the disabilities of morbid obesity and diabetes, which Clem alleges imposed substantial limitations on Mr. Clem's major life activities, including "eating, sleeping, breathing, exercising, and walking." *Id.* at ¶¶ 22-24, 26.

In October 2010, Mr. Clem underwent gastric bypass surgery and, as a result of that surgery, suffered complications, "such as extreme gas and uncontrollable diarrhea." *Id.* at ¶¶ 27-28, *see also id.* at ¶ 29. Clem alleges that Mr. Clem's symptoms "were progressive and worsened in 2013," *id.* at ¶ 30, and "caused Plaintiff significant disruption in the workplace." *Id.* at ¶ 32; *see also id.* at ¶¶ 33-34 (alleging these symptoms were both complications from the surgery and "in effect, a condition or symptom of Mr. Clem's morbid obesity and diabetes and/or borderline diabetes.").

Clem alleges that Case's President, Thomas Dolan ("Dolan"), and Case's Owner, Thomas E. Grieb ("Grieb"), complained about the symptoms exhibited by Mr. Clem. *Id.* at ¶¶ 35-42. Clem alleges that Dolan "complained about Mr. Clem's impaired digestive and bowel functions," *id.* at ¶ 35, and told Mr. Clem that he "needed to work from home and that the office environment smelled because of Mr. Clem's symptoms." *Id.* at ¶ 36. Clem also alleges that Dolan told her, on "multiple occasions," that "Mr. Clem needed to work from home because of the complications associated with his surgery and disability." *Id.* at ¶ 37.

Clem further alleges that Dolan complained to Grieb about Mr. Clem "constantly," *id.* at ¶ 38, and that when Mr. Clem's symptoms worsened in 2013, *id.* at ¶ 30, Dolan and Grieb "harassed Plaintiff about her husband's condition." *Id.* at ¶ 39. Specifically, Clem alleges that Dolan and Grieb "brought the subject up frequently with Plaintiff" and "made numerous comments directly to Plaintiff because of her association with Mr. Clem," including:

  a. "We have to do something about Rich."

  b. "This can't go on."

  c. "Why is Rich having these side effects?"

  d. "Is Rich following his doctor's recommendations?"

  e. "We cannot run an office and have visitors with the odor in the office."

  f. "Tell Rich that we are getting complaints from visitors who have problems with the odors."

*Id.* at ¶ 40. Clem alleges that Dolan and Grieb made "these comments and other comments like these to Plaintiff on a regular basis." *Id.* at ¶ 41.

Clem alleges that Dolan and Grieb continued to make these comments "until Mr. Clem was terminated on February 28, 2014." *Id.* at ¶ 44. On that same date, Clem "terminated her [own] employment because of the [alleged] harassment and discrimination her husband faced as a result

3

of his disability and the resulting symptoms as well as the [alleged] harassment and severe and pervasive environment that she was subjected to as a result of her husband's disability or perceived disability." *Id.* at ¶ 45.

On or about September 20, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 13, Ex. A. On or about June 11, 2015, the EEOC issued Plaintiff a Notice of Right to Sue letter. *Id.* at ¶ 15, Ex. B

On September 11, 2015, Plaintiff filed suit against Defendant. On November 23, 2015, Defendant filed a motion to dismiss, which was terminated as a result of Plaintiff filing an Amended Complaint on December 9, 2015. On December 28, 2015, Defendant filed the instant motion to dismiss.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a

state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. DISCUSSION

#### A. The Amended Complaint Fails to State a Claim for Associational Discrimination under the ADA.

The ADA prohibits employers from taking adverse employment action against an employee "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4); *see Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 510 (3d Cir. 2009). To state a *prima facie* claim of association discrimination under the ADA, a plaintiff must allege:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

5

*Erdman v. Nationwide Ins. Co.*, 621 F. Supp. 2d 230, 234 (M.D. Pa. 2007) (quoting *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1085 (10th Cir. 1997)), *aff'd*, 582 F.3d 500 (3d Cir. 2009); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016); *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011); *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230-31 (11th Cir. 1999); *Pollere v. USIG Pa., Inc.*, 136 F. Supp. 3d 680 (E.D. Pa. 2015).

Here, there is no dispute that Plaintiff's allegations satisfy the first and third elements. Therefore, Defendant's motion to dismiss turns on whether Plaintiff has sufficiently alleged that she was (1) subjected to an adverse employment action, either in the form of (i) the alleged comments Dolan and Grieb made to Plaintiff or (ii) her alleged constructive termination; and (2) whether the alleged adverse employment action(s) occurred under circumstances raising a reasonable inference that Mr. Clem's disability was a determining factor in Defendant's decision, or, in other words, that the actions were taken "because of" Mr. Clem's disability. *Erdman*, 582 F.3d at 510.

Defendant advances three arguments as to why the Amended Complaint fails to state a *prima facie* case of associational discrimination under the ADA: (1) hostile work environment is not a cognizable cause of action under the ADA; (2) the claim of associational discrimination is limited to four situations, none of which occurred in this matter; and, (3) Plaintiff has failed to sufficiently allege conduct that was both severe and pervasive so as to constitute a hostile work environment and, therefore, has failed to adequately allege an adverse employment action. The Court will discuss each argument in turn.

First, Defendant correctly argues that the Third Circuit has yet to expressly confirm that the ADA creates a cause of action for hostile work environment. *See Barclay v. AMTRAK*, 240 F.

App'x. 505, 508 (3d Cir. 2007); *Magerr v. City of Philadelphia*, No. 15-4264, 2016 U.S. Dist. LEXIS 48177, *28 (E.D. Pa. Apr. 11, 2016). *Cf. McCall v. City of Philadelphia*, 629 F. App'x. 419, 421 (3d Cir. 2015); *Mercer v. SEPTA*, 608 F. App'x. 60, 64 n.3 (3d Cir. 2015); *Sconfienza v. Verizon Pa., Inc.*, 307 F. App'x. 619, 623 (3d Cir. 2008). Nevertheless, the Court of Appeals has noted in *dicta* that, based on the fact that "almost identical" language contained in Title VII of the Civil Rights Act of 1964 ("Title VII") does create such a cause of action, and that Title VII and the ADA both "'serve the same purpose--to prohibit discrimination in employment against members of certain classes,'" when taken together "indicates that a cause of action for harassment [*i.e.*, hostile work environment] exists under the ADA." *Walton v. Mental Health Ass'n*, 168 F.3d 661, 666 (3d Cir. 1999) (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995)). Here, Defendant has not offered any substantive argument as to why there can be no hostile work environment cause of action under the ADA; rather, it merely asserts that dismissal is required based on the fact that the Third Circuit has not explicitly recognized such a cause of action in a published decision. While that argument is well taken, under the Third Circuit's guidance, this Court may "assume this cause of action without confirming it," *id.* at 666-67, particularly because, as discussed in more detail below, Plaintiff has failed to sufficiently plead facts that would show the existence of a hostile work environment.

Second, Defendant posits that the ADA's associational provision applies in only four situations: (1) termination based on the belief that the employee might miss work to care for a disabled employee; (2) termination based on a disabled relative's perceived health care costs to the company; (3) termination based on fear of an employee contracting or spreading a relative's disease; and (4) termination because an employee is somewhat distracted by a relative's disability, yet not so distracted that she requires accommodations to satisfactorily perform the functions of

her job. To support its position, Defendant refers this Court to the Third Circuit's decision in *Erdman*. *See* 582 F.3d at 510, 511 n.7. However, this Court disagrees with Defendant's restrictive reading of *Erdman*. Although it is true that other courts have framed the associational discrimination cause of action as applying only in limited circumstances,[1] the Third Circuit has not imposed such limits in *Erdman* or any other decision. Indeed, in *Erdman*, the Third Circuit surveyed case law from the First and Fourth Circuits, *see* 582 F.3d at 510-11 (citing *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26 (1st Cir. 2000); *Tyndall v. Nat'l Ed. Ctrs.*, 31 F.3d 209, 214 (4th Cir. 1994)), in finding that associational discrimination could occur in a situation not discussed by the Seventh Circuit in the *Larimer* case– termination based on the belief that the employee might miss work to care for a disabled employee – because that particular situation "comport[ed] with the language of the statute," that "a decision motivated by unfounded stereotypes or assumptions about the need to care for a disabled person may be fairly construed as 'because of the . . . disability' itself." *Id.* at 511 (quoting 42 U.S.C. § 12112(b)(4)). Thus, although cases that align with the four situations listed above may represent clearer examples of "circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision," *Erdman*, 621 F. Supp. 2d at 234 (citations omitted), this Court does not read *Erdman* to necessarily limit the ADA's associational discrimination provision to *only* those situations. *See Disabled in Action of Pa. v. SEPTA*, 635 F.3d 87, 94 (3d Cir. 2011) (ADA must be liberally construed to effectuate purpose of eliminating discrimination).

---

[1] *See, e.g.*, *Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir.) ("Three types of situation are, we believe, within the intended scope of the rarely litigated (this is our first case) association section. We'll call them 'expense,' 'disability by association,' and 'distraction.'"), *cert. denied*, 543 U.S. 984 (2004).

8

Clearly, however, this case does not fall within the four categories as listed. Nor has Plaintiff sufficiently alleged that Dolan and Grieb's comments were "motivated by unfounded stereotypes or assumptions" about Mr. Clem's disability or disability-related symptoms so as to be "fairly construed as 'because of the . . . disability' itself." *Erdman*, 582 F.3d at 511 (quoting 42 U.S.C. § 12112(b)(4)). In fact, based on the allegations in the Amended Complaint, the Court expresses doubt whether Plaintiff *could* allege facts to support a claim of associational discrimination under the ADA. However, because the Court finds that Plaintiff has failed to sufficiently allege an adverse employment action by Defendant (factor 3), this Court need not address whether the Third Circuit would recognize the associational discrimination cause of action based on these circumstances. Accordingly, the Court will not address whether Plaintiff has adequately alleged that Mr. Clem's disability was a determining factor in the employer's decision (factor 4) at this time.

Finally, Defendant argues that Plaintiff has failed to adequately allege conduct that is both severe and pervasive so as to create a hostile work environment and, therefore, has failed to adequately allege an adverse employment action by Defendant. While this Court finds that Plaintiff has adequately alleged conduct that was pervasive, but not severe, nonetheless, the Court finds that the circumstances alleged by Plaintiff, when viewed as a whole and in the light most favorable to Plaintiff, fail to show that the alleged conduct altered the conditions of Plaintiff's employment so as to create an abusive work environment. Accordingly, the Court will dismiss Count I of the Amended Complaint without prejudice on this basis.

"The Supreme Court has defined an adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Reynolds v.*

*Dep't of the Army*, 439 F. App'x. 150, 153 (3d Cir. 2011) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the *sine qua non*. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999).

Accordingly, "a plaintiff may prove an adverse employment action by proving that he or she was subjected to a hostile work environment." *Greer v. Mondelez Global, Inc.*, 590 F. App'x. 170, 173 (3d Cir. 2014) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986)). A hostile work environment claim requires a plaintiff to show that the workplace is permeated with "discriminatory intimidation, ridicule[,] and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Vinson*, 477 U.S. at 67)).[2] As the Supreme Court explained in *Harris*, the test "is not, and by its nature cannot be, a mathematically precise test." *Id.* at 22.

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 22-23 (citations omitted); *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely

---

[2] Although *Harris* involved a hostile work environment claim under Title VII, the Third Circuit has noted that case law under Title VII can be used interchangeably for cases arising under the ADA where, as here, there is no material difference in the question being addressed." *See Walton*, 168 F.3d at 666 (quoting *Newman*, 60 F.3d at 157).

10

serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted). Neither the ADA (nor Title VII) is a general code of civility, and the standards which govern claims under these statutes are designed to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, . . . jokes, and occasional teasing.'" *Id.* (citations omitted); s*ee also Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) ("[T]he ADA is not a code of civility, and allegations of adverse actions must be considered under both an objecti[ve] and subjective standard[.]").

Here, Plaintiff alleges that Defendant "created a hostile work environment for Plaintiff by targeting her with harassment and comments because of her association with her disabled husband." Am. Compl. ¶ 59. Plaintiff's allegations that Dolan and Grieb made "numerous comments," which occurred "frequently," "on multiple occasions," and "on a regular basis," *id.* at ¶¶ 35, 37, 40, are sufficient at this stage of the litigation to allege "pervasive" conduct.[3] *See Cubbage v. Bloomberg, L.P.*, No. 05-2989, 2008 U.S. Dist. LEXIS 33236, *19 (E.D. Pa. Apr. 22, 2008) (holding that allegations that conduct occurred "repeatedly and continuously" on "numerous" occasions sufficient to withstand challenge under Rule 12(b)(6)).

Plaintiff's allegations with respect to the content of those comments, however, fail to rise to the level of severity which would support a claim for hostile work environment. The comments allegedly made by Dolan and Grieb were ostensibly made by concerned employers regarding the health and physical condition of their employee, Mr. Clem,[4] and the unintended effects that the

---

[3] The Court notes that Plaintiff also alleges that Dolan complained *to Grieb* about Mr. Clem "constantly." *Id.* at ¶ 38.

[4] *See* Am. Compl. ¶ 40(c) ("Why is Rich having these side effects?"); *id.* at ¶ 40(d) ("Is Rich following his doctor's recommendations?").

symptoms from his surgery and his disability had on the business.[5] Even viewed in the light most favorable to Plaintiff, these comments could – at best – be construed only as inappropriate comments by Dolan and Grieb. *See Faragher*, 524 U.S. at 788. Although it appears that, to date, no court has addressed facts similar to this unique situation, this Court has surveyed case law from around the country considering hostile work environment claims premised on coworkers and supervisors complaining about workers' bathroom usage and body odor in the workplace.[6] Although these cases were decided under Rule 56, rather that Rule 12, the conduct at issue in these cases was both (1) more egregious than that alleged by Plaintiff here, and (2) targeted at the individual with the disability, rather than a known associate of the individual experiencing the bathroom or body odor issues which, in this Court's opinion, somewhat lessens the impact of the comments and conduct at issue.

---

[5] *See Id.* at ¶ 40(a) ("We have to do something about Rich."); *id.* at ¶ 40(b) ("This can't go on."); *id.* at ¶ 40(e) ("We cannot run an office and have visitors with the odor in the office."); *id.* at ¶ 40(f) ("Tell Rich that we are getting complaints from visitors who have problems with the odors.").

[6] *See, e.g.*, *Hinz v. Vill. of Perry*, No. 13-6302, 2015 U.S. Dist. LEXIS 80661, *5-6, 34-35 (W.D.N.Y. June 22, 2015) (granting summary judgment and finding in *dicta* that supervisor's comments and practical jokes about plaintiff's frequent bathroom usage due to Crohn's disease, which included telling the plaintiff that he was "full of shit," locking the plaintiff in a bathroom with a piece of rope and a piece of wood and telling him to order pizza if he was "going to spend all day in the bathroom," and encouraging the plaintiff to move his office into the bathroom, were "simple teasing" and "isolated incidents," which "while certainly inappropriate were not sufficiently severe or pervasive to meet the standard for a hostile environment claim."), *aff'd*, No. 15-2239, 2016 U.S. App. LEXIS 11074 (2d Cir. June 20, 2016); *Stanley v. White Swan, Inc.*, No. CIV-00-1291-F, 2002 U.S. Dist. LEXIS 27901, *26, 45-46 (W.D. Okla. Sept. 26, 2002) (granting summary judgment and holding that allegation that plaintiff was "ridiculed because of the odor which came from the restroom due to the condition of her digestive system" failed to "present any genuine issue concerning a sufficiently hostile work environment so as to allow plaintiff to proceed to trial on this claim."); *Pierce v. Mich. Dep't of Corr.*, No. 4-cv-37, 2001 U.S. Dist. LEXIS 11992, *62 (W.D. Mich. Aug. 9, 2001) (granting summary judgment and noting that "[t]he court does not doubt that being confronted by a supervisor with written complaints from co-workers, male and female, regarding odors emanating from one's person or personal property would be embarrassing. Embarrassment is not equivalent to an objectively abusive working environment.").

To be sure, Plaintiff is not required to plead both severe *and* pervasive conduct. As the Third Circuit has recognized, "[t]he disjunctive phrasing means that 'severity' and 'pervasiveness' are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006) (quoting 2 Charles A. Sullivan, Michael J. Zimmer & Rebecca Hanner White, *Employment Discrimination Law and Practice* 455 (3d ed. 2002)). Nevertheless, the alleged existence of severe *or* pervasive conduct, alone, is not enough to sustain a claim of hostile work environment; a plaintiff must also be able to allege that the conduct was "sufficiently severe or pervasive *to alter the conditions of the victim's employment and create an abusive working environment*." *Harris*, 510 U.S. at 21 (quoting *Vinson*, 477 U.S. at 67)). Conduct that does not create an "objectively" hostile or abusive work environment is beyond the purview of the ADA (to the extent the hostile work environment cause of action exists under that statute at all). *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

In determining whether the alleged conduct "alter[ed] the conditions of the victim's employment and create[d] an abusive working environment," the Court must examine the totality of the circumstances alleged, including the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance." *Harris*, 510 U.S. at 21, 22-23. Importantly, although "no single factor is required," *id.* at 23, the factors are interrelated, and the presence of one may not necessarily "compensate for the absence of the other factors." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc) (stating that "[t]o the extent [the plaintiff] showed frequent conduct, the frequency of it does not compensate for the

13

absence of the other factors" of the hostile work environment analysis), *cert. denied*, 529 U.S. 1068 (2000). Here, the only factor that would show a change in the conditions of Plaintiff's employment is her vague allegations regarding the pervasiveness of Dolan and Grieb's comments to her. But Plaintiff does not allege that those "numerous comments" were physically threatening to her; nor does she allege the comments were made to her in front of other staff in the office so as to publicly humiliate her. More importantly, Plaintiff has not alleged that these comments interfered with her work performance in any specific way, other than her conclusory allegation that the hostile work environment "detrimentally affected [her] and would detrimentally affect a reasonable person in the same position as Plaintiff."[7] Am. Compl. ¶ 47. Accordingly, the Court holds that Plaintiff has failed to allege facts that show that her workplace was permeated with "discriminatory intimidation, ridicule[,] and insult" that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (quoting *Vinson*, 477 U.S. at 67)).

Plaintiff's claim of constructive discharge fails for the same reason. "Constructive discharge occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir. 1984)), *cert. denied*, 551 U.S. 1141 (2007). Importantly, "'hostile-environment constructive discharge entails something more' than just offensive behavior that is severe or pervasive enough 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Neely v. McDonald's Corp.*, 340 F. App'x. 83, 86 (3d Cir. 2009)

---

[7] The Court notes that Plaintiff also alleges that Mr. Clem's "symptoms caused Plaintiff significant disruption in the workplace." Am. Compl. ¶ 32. Obviously, that allegation cannot be attributed to Defendant.

(quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004)). Instead, "a plaintiff advancing a constructive discharge claim 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Id.* (quoting *Suders*, 542 U.S. at 147); *see also Spencer*, 469 F.3d at 317 n.4 ("To prove constructive discharge, the plaintiff must demonstrate a *greater severity or pervasiveness* of harassment than the minimum required to prove a hostile working environment.") (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994)) (emphasis added).

Plaintiff alleges that she was constructively terminated on February 28, 2014, when she quit "because of the harassment and discrimination her husband faced as a result of his disability and the resulting symptoms as well as the harassment and severe and pervasive environment that she was subjected to as a result of her husband's disability or perceived disability." Am. Compl. at ¶ 45; *see also id.* at ¶ 61. The first half of Plaintiff's allegation is not even an appropriate consideration in this matter; whether *Mr. Clem* faced harassment and discrimination is irrelevant to *Plaintiff's* claim of constructive discharge.[8] Regardless, because this Court has determined that Plaintiff has not alleged sufficient facts that would show that the conditions of her employment were altered and an abusive working environment created so as to support a claim for hostile work environment, she has *a fortiori* also failed to allege that she was constructively discharged. Indeed,

---

[8] Moreover, the Complaint is unclear as to when Plaintiff "terminated her employment" on February 28, 2014, the same date on which Plaintiff alleges "Mr. Clem was terminated," using the passive voice. Am. Compl. ¶¶ 44-45. If Plaintiff's alleged constructive discharge occurred *after* Mr. Clem's employment was terminated, her claim for her constructive discharge would fail, because Plaintiff alleges that Dolan and Grieb continued to make offending comments "until Mr. Clem was terminated on February 28, 2014." *Id.* at ¶ 44. Plaintiff would only be able to offer speculation as to whether Dolan and Grieb's complaints about Mr. Clem's symptoms would have continued after Mr. Clem's employment was terminated and he (and his symptoms) were no longer present in the office. *See Neely v. McDonald's Corp.*, No. 04-1553, 2007 U.S. Dist. LEXIS 19610, *25-26 (W.D. Pa. Mar. 20, 2007) (concluding that a constructive discharge did not occur because the plaintiff resigned after the harassment ceased), *aff'd*, 340 F. App'x. 83 (3d Cir. 2009).

Plaintiff has not alleged any of the factors the Third Circuit has held to be indicative of constructive discharge, such as (1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations. *See Mandel*, 706 F.3d at 169-70.

Although it would appear highly unlikely that Plaintiff held back allegations of more egregious comments or other conduct by Dolan and Grieb, or other employees of Defendant, that resulted in a change in the terms and conditions of her employment and the creation of an abusive working environment, nevertheless, this Court will afford Plaintiff an opportunity to amend her Amended Complaint so as to cure her deficiencies. Accordingly, Count I of the Amended Complaint is DISMISSED without prejudice.

      **B.**      **Supplemental Jurisdiction.**

Having dismissed Count I of the Amended Complaint without prejudice, the only remaining claim is Plaintiff's claim for associational discrimination under NJLAD. 28 U.S.C. § 1367(c)(3) permits the district court, within its discretion, to decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." Indeed, the Third Circuit has used even stronger language to describe the court's obligations under the provision: "The power of the court to exercise pendent jurisdiction, though largely unrestricted, requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court." *City of Pittsburgh Comm'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)). "[I]f it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances'

16

exist." *Id.* "'[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Id.* (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Burnsworth v. PC Lab.*, 364 F. App'x 772, 776 (3d Cir. 2010).

In light of the fact that (1) the parties have not conducted any discovery; (2) a trial has not occurred; (3) the remaining claim is state-law based; and (4) no extraordinary circumstances exist to compel the Court to exercise jurisdiction, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claim should Plaintiff's amendment, if any, to her federal ADA claim ultimately proves futile.[9]  Plaintiff is hereby advised that § 1367(d) permits a tolling of 30 days on the statute of limitations period of Plaintiff's state law claim after the date on which the Court declines supplemental jurisdiction. *See Petrossian v. Cole*, 613 F. App'x. 109, 112 (3d Cir. 2015).

Accordingly, Defendant's Motion to dismiss Count II of the Amended Complaint is DENIED as this time.  Plaintiff shall file a Second Amended Complaint, if any, within fourteen (14) days of the date of this Opinion.

## IV. CONCLUSION

---

[9] Indeed, the exercise of supplemental jurisdiction in this matter would be particularly inappropriate given the unsettled nature of whether a claim for associational discrimination is even cognizable under NJLAD.  *Compare Downs v. U.S. Pipe & Foundry Co.*, 441 F. Supp. 2d 661, 665 (D.N.J. 2006), *with Kennedy v. Chubb Grp. of Ins. Cos.*, 60 F. Supp. 2d 384, 395 (D.N.J. 1999).  Such a decision on state law is better made by the state courts.

For the foregoing reasons, Defendant's Motion to dismiss is GRANTED in part and DENIED in part.  Specifically, Count I of the Amended Complaint is DISMISSED without prejudice.

Dated: July 18, 2016

/s/ The Honorable Freda L. Wolfson

United States District Judge